709 S.E.2d 685

**Denise MURPHY, Appellant,**

v.

**The STATE, Respondent.**

No. 4816.

Court of Appeals of South Carolina.

Submitted Jan. 4, 2011.

Decided April 6, 2011.

John A. O'Leary, of Columbia, for Appellant.

Rachel Donald Erwin, of Blythewood, for Respondent.

THOMAS, J.

Denise Murphy appeals her conviction for driving under the influence (DUI). We affirm.[1]

## FACTS

On April 4, 2007, Officer Jerry Rothell stopped Murphy's vehicle after noticing her swerving and weaving. Rothell conducted three field sobriety tests and arrested Murphy for DUI. A subsequent Datamaster breath test revealed Murphy had a blood alcohol level of 0.13. A dashboard video camera in Rothell's vehicle recorded the traffic stop.

During the traffic stop Murphy was made to walk a straight line. However, during this sobriety test, the videotape only recorded her from essentially the knees up, and in portions only displayed half her body as she walked to the limit of the camera's field of view. In addition, a horizontal gaze nastagmus test was conducted, in which Murphy was made to follow the movement of a pen with only her eyes. However, Rothell conducted this test in the spot where Murphy stood after completing the straight line test, with her back to the car, on the fringe of the dashboard camera's field of view.[2] On cross-examination, Rothell explained:

> I could have done it completely in front of the car and you wouldn't have seen it. The reason for it is it's checking for an involuntary twitching of the eye. I turned around and pointed her back toward the car to do that because the blue [light] is going to flash in and out and create problems with her eyes focusing. That's the reason I moved her to the side and had her turn her back to the car and made sure

---

1. We decide this case without oral argument pursuant to Rule 215, SCACR.

2. Contrary to Murphy's allegation, upon review of the videorecording produced by the dashboard camera, Rothell does not appear to affirmatively removing Murphy from the view of the camera.

that she didn't feel like the blue lights were bothering her at all.

Pre-trial, Murphy unsuccessfully moved to suppress the videotape of the traffic stop and sobriety tests because (1) two of the field sobriety tests were not conducted in full view of the camera and (2) the video camera continued recording after she was placed in Rothell's police vehicle.

Additionally, Murphy's unsuccessfully moved to suppress the results of her Datamaster breath alcohol test because the Datamaster device used in her case required repairs sixteen days after her test was conducted. At trial, Murphy cross-examined Rothell in detail about SLED's repair records for the Datamaster breath alcohol test device, which Murphy acquired from SLED's website.

The jury found Murphy guilty of DUI. Murphy appealed to the circuit court, and the circuit court affirmed. This appeal followed.

## ISSUES ON APPEAL

I. Did the circuit court err in failing to suppress the incident site videotape of Murphy's traffic stop?

II. Did the circuit court err in failing to suppress Murphy's breath alcohol test results?

## STANDARD OF REVIEW

"[O]ur scope of review is limited to correcting the circuit court's order for errors of law." *City of Rock Hill v. Suchenski*, 374 S.C. 12, 15, 646 S.E.2d 879, 880 (2007).

## LAW/ANALYSIS

### I. Videotape

Section 56–5–2953 of the South Carolina Code provides:

(A) A person who violates Section 56–5–2930, 56–5–2933, or 56–5–2945 must have his conduct at the incident site and the breath test site videotaped.

(1) The videotaping at the incident site must:

(a) begin not later than the activation of the officer's blue lights and conclude after the arrest of the person for a violation of Section 56–5–2930, 56–5–2933, or a probable cause determination that the person violated Section 56–5–2945; and

(b) include the person being advised of his *Miranda* rights before any field sobriety tests are administered, if the tests are administered.

S.C.Code Ann. § 56–5–2953(A) (2006).[3]

### a. Remedy available under Section 56–5–2953

Initially, although not raised by either party, we must note that throughout the course of this matter, Murphy is inconsistent as to the remedy she seeks. Before the magistrate, Murphy argued for "suppression" of the videotape, on appeal to the circuit court Murphy argued the magistrate erred in failing to "dismiss" the charge, and now on appeal to this court Murphy argues the trial court erred in failing to "suppress" the video.

Under subsection (A) of the statute, "[t]he videotapes of the incident site and of the breath test site are admissible pursuant to the South Carolina Rules of Evidence in a criminal, administrative, or civil proceeding by any party to the action." S.C.Code Ann. § 56–5–2953(A). However, the remedy for noncompliance with the statute is dismissal. *See City of Rock Hill v. Suchenski*, 374 S.C. 12, 17, 646 S.E.2d 879, 881 (2007) ("[D]ismissal of the DU[I] charge is an appropriate remedy provided by § 56–5–2953 where a violation of subsection (A) is not mitigated by subsection (B) exceptions."); S.C.Code Ann. § 56–5–2953(B) (stating that "[f]ailure . . . to produce the videotapes required by [subsection (A) ] is not alone a ground for dismissal . . . if [certain exceptions are met]"). However, regardless of the fact that Murphy asked to suppress the videotape for noncompliance, we find the issue of the trial court's interpretation of the statute is properly before this court. Further, in light of our holding *infra*—that the statutory requirements of subsection (A) were met—the inconsis-

---

3. Section 56–5–2953 was amended effective Feb. 10, 2009. *See* Act No. 201, 2008 S.C. Acts 1682–85. Thus, the amended statute is not applicable to this case.

tencies in the remedy sought are not of consequence to this appeal.

### b. Failure to record a full view of all field sobriety tests

Murphy alleges the videotape of the incident cite does not comply with the statute because it fails to "record most of the field sobriety tests." We disagree.

"All rules of statutory construction are subservient to the maxim that legislative intent must prevail if it can be reasonably discovered in the language used." *State v. Gaines,* 380 S.C. 23, 32–33, 667 S.E.2d 728, 733 (2008).

Here, the statute provides a person "must have his conduct at the incident site and breath test site videotaped." The videotaping at the incident site must "(a) begin not later than the activation of ... blue lights and conclude after the arrest ..." and "(b) include the person being advised of his Miranda rights before any field sobriety tests are administered, if the tests are administered." S.C.Code Ann. § 56–5–2953(A)(1)(a)–(b).

Therefore, in regard to what must be recorded, the plain language of the statute is not violated as long as the recording captures (1) the accused's conduct and (2) Miranda warnings prior to field sobriety tests, if such tests occur. Murphy does not allege the video fails to capture her being advised of Miranda, but only that the statute requires that she remain in full view and record all field sobriety tests. However, nothing in the plain language of the statute indicates that an accused remain in full view of the camera for the duration of the encounter. Rather, the statute only requires her "conduct" be recorded. Conduct is generally defined as one's behavior, action, or demeanor. The Oxford Dictionary 158 (2d ed.2001). Failure of the video to maintain a full view of the accused for the duration of a field sobriety test in which she is made to walk a line, for instance, does not fail to display her behavior, demeanor, and general state. Thus, an accused need not remain in full view of the camera at all times in order for the recording to capture her conduct.

The statute speaks to the sobriety tests by stating the video must "include the person being advised of his Miranda rights before any field sobriety tests are administered, if the tests

are administered." S.C.Code Ann. § 56–5–2953(A)(1)(b). While certainly an individual's performance on such tests would be part and parcel of his or her "conduct" at the incident site, as mentioned, an unbroken recording of the tests is not necessary to capture conduct. Therefore, the recording need not display all field sobriety tests provided it captures the accused's conduct.[4]

Accordingly, we find the plain language of the statute does not require that the recording capture a continuous full view of the accused, or capture *all* field sobriety tests. Rather, provided all other requirements are met, the video need only record the accused's conduct. For this reason we find the trial court did not err in finding the video complied with section 56–5–2953(A).

### c. Terminating the video upon arrest

■ Next, Murphy argues the statute was violated when Rothell failed to stop the videotape when she was placed in the police cruiser. We disagree.

The statute provides: "The videotaping at the incident site must (a) begin not later than the activation of ... blue lights and conclude *after the arrest* of the person...." S.C.Code Ann. § 56–5–2953(A)(1)(a) (emphasis added).

Murphy alleges the provision that the recording "must ... conclude after the arrest" required Rothell to end the recording when she was placed in the police cruiser. However, in *State v. Dowd,* the supreme court affirmed a defendant's resisting arrest conviction, holding the arrest did not conclude until the defendant was locked in his jail cell. 306 S.C. 268, 270, 411 S.E.2d 428, 429 (1991). In rejecting the argument that the arrest ended upon being taken into custody, the court defined arrest as "an ongoing process, finalized only when the defendant is properly confined." *Id.*

---

4. As amended in 2009, the current version of section 56–5–2953 expressly requires the recording of field sobriety tests. *See* S.C.Code Ann. § 56–5–2953(A)(1)(a)(ii) (Supp.2010) ("The video recording at the incident site must: ... include any field sobriety tests administered."). We note that the legislature's amendment of the plain language of the statute to require the recording of field sobriety tests further bolsters our position that the plain language of the prior version, in effect at the time of this action, did not require recording of all tests.

Accordingly, we find the statute did not require the video be terminated upon Murphy being placed in the police cruiser. Thus, the trial court did not err in finding the video recording complied with the statute.

## II. Suppression of the breath test

■ Finally, Murphy argues the trial court erred in failing to suppress the results of her Datamaster breath test in light of documents from the SLED website that the machine was repaired sixteen days after her test. We disagree.

Section 56–5–2954 of the South Carolina Code requires:

The State Law Enforcement Division and each law enforcement agency with a breath testing site is required to maintain a detailed record of malfunctions, repairs, complaints, or other problems regarding breath testing devices at each site. These records must be electronically recorded. These records, including any and all remarks, must be entered into a breath testing device and subsequently made available on the State Law Enforcement Division web site.

S.C.Code Ann. § 56–5–2954 (Supp.2010).

First Murphy argues "there are no local records as required [and] the SLED records are erroneous and misleading." However, in *State v. Landon,* our supreme court found that section 56–5–2954 "is satisfied by the fact that SLED's internet records are available at the testing site itself." 370 S.C. 103, 108, 634 S.E.2d 660, 663 (2006). Moreover, Murphy has failed to include the SLED records in the record on appeal.

■ Next, Murphy argues, "[d]espite ... finding that the [a]ppellant had made a prima facie showing of prejudice as required in *Landon,* the result [was] not suppressed...."

In *Landon,* the supreme court held:

We are aware, however, that information regarding the DataMaster is exclusively within the State's control. Because SLED's failure to provide a detailed record significantly hampers the defendant's ability to show prejudice in this situation, we hold that once a defendant makes a prima facie showing of prejudice, the burden must shift to the State to prove the defendant was not prejudiced, either by providing records to show the machine was working proper-

ly at the time of testing or by some other contemporaneous evidence.

*Id.* at 109, 634 S.E.2d at 663.

In this case, Murphy argues only that she made a prima facie showing of prejudice. Interestingly, it appears that the trial court agreed as in response to Murphy's pre-trial motion to suppress the test results, the trial court stated:

> I'm going to deny your motion.... It's something that can be cross-examined and I guess I'm basing it on the number of tests that were conducted between the subject test, ... and the date that there was some repair made on this datamaster. Anyway, *I feel like the State has satisfied the requirement of Landon* but it still I guess is a jury issue as to how they want to treat the weight of the datamaster.

(emphasis added).

First, we are compelled to state that a prima facie showing of prejudice does not render the test results inadmissible per se but simply shifts the burden to the State to show the machine was working properly at the time of the test. *See Landon,* 370 S.C. at 109, 634 S.E.2d at 663. Therefore, even if we were to accept Murphy's contention that she made a prima facie showing of prejudice, because she does not allege the trial court erred in finding the State satisfied its burden under *Landon,* she offers this court no basis on which to reverse the ruling of the trial court.

However, notwithstanding that Murphy does not allege the trial court erred in finding the State met its burden under *Landon,* we find the evidence supports the trial court's conclusion that it did. The State presented evidence that the Datamaster conducts a series of self-diagnosing checks to insure that it is operating correctly both prior to and subsequent to any actual breath testing. In this regard evidence exists to demonstrate that the Datamaster in question conducted this series of checks at least twenty-five times after Murphy's test without indicating a malfunction or need for repair.

Accordingly, even if we were to accept Murphy's claim that she presented a prima facie showing of prejudice, we find the evidence supports the determination that the State met its

burden under *Landon* and that the issue was one proper for the jury.

## CONCLUSION

For the reasons stated above, the ruling is

**AFFIRMED.**

GEATHERS, J., concurs.

PIEPER, J., concurring.

I concur in the resulting decision to affirm. However, I would resolve the videotape issue on preservation grounds.

"In order for an issue to be preserved for appellate review, it must have been raised to and ruled upon by the trial judge." *State v. Dunbar*, 356 S.C. 138, 142, 587 S.E.2d 691, 693 (2003). When the circuit court is acting in an appellate capacity, the appellant must raise an issue to the circuit court in order to preserve the issue. *Rogers v. State*, 358 S.C. 266, 270, 594 S.E.2d 278, 280 (Ct.App.2004). Moreover, to preserve an issue an appellant must argue the same grounds at trial as those he argues on appeal. *State v. Smith*, 337 S.C. 27, 34, 522 S.E.2d 598, 601 (1999).

During pretrial motions before the magistrate, Murphy moved to suppress the videotape because of a violation of section 56–5–2953 of the South Carolina Code (2006) by not recording all of the field sobriety tests, and Murphy also asked that the case be dismissed. On appeal to the circuit court, Murphy argued his charges should be dismissed based on a violation of the same statute; however, the remedy of *suppression* on the ground of not recording all of the field sobriety tests was never addressed by the circuit court. The circuit court did address Murphy's issue about allowing a post-arrest video of the defendant into evidence, as well as the issue about the datamaster records. Murphy subsequently appealed to this court, basing all the issues on appeal on the court's failure to *suppress* the videotape. Because some of Murphy's arguments changed in part, the issue of suppression of the video for not fully taping the field sobriety tests, as opposed to dismissal of the case, does not appear to be properly before us. Just as a motion to strike evidence does

not automatically preserve a request for a mistrial, a request for suppression does not automatically preserve a request for dismissal, and vice versa. Thus, I would not reach the merits of Murphy's suppression issue on the field sobriety tests because the circuit court only addressed the issue using the perspective of whether dismissal was appropriate.

As to the remaining portions of the majority opinion on the post-arrest taping issue and the datamaster records issue, I concur with the majority.