LOCKEMY, C.J.:
**369 The State appeals the dismissal of a driving under the influence (DUI) charge arguing the trial court misinterpreted sections 56-5-2953(A) and (B) of the South Carolina Code (2018). We reverse the dismissal of the DUI charge against Tony Latrell Kinard and remand the case for trial.
FACTS
On November 3, 2015, at approximately 6:30 in the evening, Tony Latrell Kinard was involved in a two-car accident in **370 Newberry County. Newberry County Deputy Jesse Snelgrove, whose vehicle was not equipped with a video camera, responded to the scene after the arrival of fire and EMS personnel. Deputy Snelgrove testified that when he arrived at the scene, he observed Kinard yelling at the EMS personnel and at a female he later found out was Kinard's girlfriend. Deputy Snelgrove testified he attempted to calm Kinard. Kinard responded by yelling and cursing at him and staring at him with his fist balled up. Deputy Snelgrove, citing concern about being assaulted, handcuffed Kinard, placed him under arrest for disorderly conduct, and put Kinard in his car. Shortly afterward, Trooper Mickey Barnett with the Highway Patrol arrived at the scene. Prior to his arrival, Trooper Barnett activated his in-car video camera. He parked his patrol car directly behind Deputy Snelgrove's car, which had its blue lights on. Deputy Snelgrove informed Trooper Barnett that Kinard's girlfriend removed bottles of alcohol from Kinard's car. Trooper Barnett testified he observed Kinard in the backseat of Deputy Snelgrove's car staring straight ahead and Kinard refused to speak to him. Trooper Barnett placed Kinard under arrest for driving under the influence, citing his demeanor and the fact he "smelled of alcohol." Trooper *140 Barnett's video camera recorded the scene. From the video, Trooper Barnett can be heard Mirandizing Kinard, but because Kinard is inside of Deputy Snelgrove's car and he does not verbally respond to Trooper Barnett, Kinard is neither seen nor heard on the video.
Kinard's trial was set to begin on June 8, 2016, in Newberry County. Just prior to trial, Kinard made a motion to dismiss the DUI charge arguing the video failed to meet the requirements of section 56-5-2953 of the South Carolina Code (2018). The trial court heard the testimony of Deputy Snelgrove and Trooper Barnett, viewed the video of Kinard's arrest, and heard arguments from both Kinard and the State. The trial court granted Kinard's motion on the record and prepared a written order to that effect dated July 25, 2016. The State filed a motion to reconsider on June 9, 2016. The trial court held a hearing on the State's motion to reconsider on July 25, 2016, and in an order issued the same day, the trial court denied the State's motion. This appeal followed.
**371 STANDARD OF REVIEW
"In criminal cases, the appellate court sits to review errors of law only and is bound by the trial court's factual findings unless they are clearly erroneous. Thus, on review, the appellate court is limited to determining whether the trial judge abused his discretion." State v. Garris , 394 S.C. 336, 344, 714 S.E.2d 888, 893 (Ct. App. 2011) (citations omitted). "An abuse of discretion occurs when the court's decision is unsupported by the evidence or controlled by an error of law." Id. (citations omitted).
LAW/ANALYSIS
A. Section 56-5-2953(A)
The State first argues the trial court erred in dismissing the DUI charge due to its misinterpretation of section 56-5-2953(A) of the South Carolina Code (2018). Section 56-5-2953(A) provides:
(A) A person who violates Section 56-5-2930, 56-5-2933, or 56-5-2945 must have his conduct at the incident site and the breath test site video recorded.
(1)(a) The video recording at the incident site must:
(i) not begin later than the activation of the officer's blue lights;
(ii) include any field sobriety tests administered; and
(iii) include the arrest of a person for a violation of Section 56-5-2930 or Section 56-5-2933, or a probable cause determination in that the person violated Section 56-5-2945, and show the person being advised of his Miranda rights .
...
(emphasis added).
"The primary rule of statutory construction is to ascertain and give effect to the intent of the legislature." Mid-State Auto Auction of Lexington, Inc. v. Altman , 324 S.C. 65, 69, 476 S.E.2d 690, 692 (1996). "All rules of statutory construction are subservient to the one that the legislative intent must prevail if it can be reasonably discovered in the language used, and that language must be construed in the light of the intended purpose of the statute."
**372 Broadhurst v. City of Myrtle Beach Election Comm'n , 342 S.C. 373, 380, 537 S.E.2d 543, 546 (2000). "Unless there is something in the statute requiring a different interpretation, the words used in a statute must be given their ordinary meaning." Mid-State Auto Auction of Lexington, Inc., 324 S.C. at 69, 476 S.E.2d at 692.
Our courts examined the legislative intent of section 56-5-2953 and determined "the primary intention behind section 56-5-2953 was to reduce the number of DUI trials heard as swearing contests by mandating the State videotape important events in the process of collecting DUI evidence." State v. Elwell , 396 S.C. 330, 336, 721 S.E.2d 451, 454 (Ct. App. 2011), aff'd , 403 S.C. 606, 743 S.E.2d 802 (2013). In State v. Taylor , 411 S.C. 294, 768 S.E.2d 71 (Ct. App. 2014), we determined section 56-5-2953 serves two primary purposes. The first purpose is to create direct evidence of a DUI arrest by requiring the video include any field sobriety tests administered. Id. at 306, 768 S.E.2d at 77. The other purpose, which is relevant to the case at *141 hand, is to protect the rights of the defendant by "requiring video recording of the person's arrest and of the officer issuing Miranda warnings." Id .
The State concedes Kinard is not seen or heard on the video, but rather argues the video demonstrates Trooper Barnett talking to Kinard and advising Kinard of his Miranda rights. Therefore, the State maintains it did not fail to meet the requirements of section 56-5-2953(A).
Section 56-5-2953(A)(1)(a) states the "video recording at the incident site must: ... show the person being advised of his Miranda rights." The trial court interpreted the word "show" to mean "to cause or to permit the person being advised of his Miranda rights to be seen." This interpretation comports with the plain language of the statute and with the legislative purpose of protecting the rights of the defendant. In addition, section 56-5-2953(A) states a person who violates the DUI provision "must have his conduct at the incident cite ... video recorded." Under a plain reading of the statute, a person's conduct cannot be captured from a video in which he cannot be seen.
Although South Carolina courts have not specifically addressed a situation identical to the facts of this case, our courts have dealt with similar situations. In State v. Sawyer , 409 S.C. 475, 763 S.E.2d 183 (2014), the supreme court considered **373 whether a silent video meets the requirements of section 56-5-2953(A). That court found "the statute required a videotape not merely of the individual's conduct while being read his Miranda and informed consent rights, but also that it 'must include' 'the reading of Miranda rights' and 'the person being informed that he is being videotaped, and that he has the right to refuse the test.' " Id. at 480, 763 S.E.2d at 185-86 (quoting S.C. Code Ann. § 56-5-2953(A)(2)(b) ). Thus, the court held the silent video did not meet the requirements of section 56-5-2953(A). Id.
In addition, we considered a situation in which an officer moved the defendant off camera during the administration of the breath test in State v. Johnson , 396 S.C. 182, 720 S.E.2d 516 (Ct. App. 2011). The viewer could hear the breath test, but the viewer could not see defendant on the videotape. Interpreting section 56-5-2953(A), we determined "the officer violated section 56-5-2953(A)(2)(c) when he failed to capture the administration of the breath test on the videotape." Id. at 189, 720 S.E.2d at 520.
However, in State v. Taylor , 411 S.C. 294, 768 S.E.2d 71 (Ct. App. 2014), we found no violation of section 56-5-2953 when the video recording of the incident briefly omitted the suspect. We based our decision on the fact the "omission does not occur during any of those events that either create direct evidence of a DUI or serve important rights of the defendant." Id . at 306, 768 S.E.2d at 77.
Given our understanding of the legislative intent in section 56-5-2953(A), the requirement that the arrest and Miranda reading be videotaped serves to protect the rights of the defendant. We agree with the trial court "[w]ithout being able to see [Kinard] on the video it is not possible to determine if he actually heard and understood his Miranda rights." Like the circumstances in Johnson , the officer failed to capture the arrest and Miranda warning on the videotape. Furthermore, in accordance with Sawyer , one cannot glean Kinard's conduct while being read his Miranda and informed consent rights from the video. Unlike the defendant in Taylor , this omission occurs during the event serving to protect the rights of the defendant. Accordingly, we find the trial court did not abuse its discretion in finding the video did not comply with section 56-5-2953(A).
**374 B. Section 56-5-2953(B)
Next, the State argues the trial court erred in not finding compliance with 56-5-2953(A) was excused under section 56-5-2953(B) of the South Carolina Code (2018). Section 56-5-2953(B) provides:
(B) Nothing in this section may be construed as prohibiting the introduction of other relevant evidence in the trial of a violation of Section 56-5-2930, 56-5-2933, or 56-5-2945. Failure by the arresting officer to produce the video recording required by this section is not alone a ground for dismissal of any charge made pursuant to Section 56-5-2930, 56-5-2933, *142 or 56-5-2945 if the arresting officer submits a sworn affidavit certifying that the video recording equipment at the time of the arrest or probable cause determination, or video equipment at the breath test facility was in an inoperable condition, stating which reasonable efforts have been made to maintain the equipment in an operable condition, and certifying that there was no other operable breath test facility available in the county or, in the alternative, submits a sworn affidavit certifying that it was physically impossible to produce the video recording because the person needed emergency medical treatment, or exigent circumstances existed. In circumstances including, but not limited to, road blocks, traffic accident investigations, and citizens' arrests, where an arrest has been made and the video recording equipment has not been activated by blue lights, the failure by the arresting officer to produce the video recordings required by this section is not alone a ground for dismissal. However, as soon as video recording is practicable in these circumstances, video recording must begin and conform with the provisions of this section. Nothing in this section prohibits the court from considering any other valid reason for the failure to produce the video recording based upon the totality of the circumstances; nor do the provisions of this section prohibit the person from offering evidence relating to the arresting law enforcement officer's failure to produce the video recording.
In Town of Mount Pleasant v. Roberts , 393 S.C. 332, 346, 713 S.E.2d 278, 285 (2011), the supreme court explained noncompliance with section 56-5-2953(A) is excused pursuant to section 56-5-2953(B) :
**375 (1) if the arresting officer submits a sworn affidavit certifying the video equipment was inoperable despite efforts to maintain it; (2) if the arresting officer submits a sworn affidavit that it was impossible to produce the videotape because the defendant either (a) needed emergency medical treatment or (b) exigent circumstances existed; (3) in circumstances including, but not limited to, road blocks, traffic accidents, and citizens' arrests; or (4) for any other valid reason for the failure to produce the videotape based upon the totality of the circumstances.
The supreme court further clarified in Teamer v. State , 416 S.C. 171, 177, 786 S.E.2d 109, 112 (2016), "based on this [c]ourt's interpretation of the statute in Roberts , an affidavit is not needed to qualify for the third and fourth exceptions."
The trial court found section 56-5-2953(B) generally did not apply to this case because a video recording exists. The trial court presumably focused on the fact that the officer did not fail to "produce the video." However, this reading does not comport with the legislative intent of the statute. As we stated previously, "[t]he primary rule of statutory construction is to ascertain and give effect to the intent of the legislature." Mid-State Auto Auction of Lexington, Inc. , 324 S.C. at 69, 476 S.E.2d at 692. "The statute as a whole must receive practical, reasonable, and fair interpretation consonant with the purpose, design, and policy of lawmakers." Hinton v. S.C. Dep't of Prob., Parole & Pardon Servs. , 357 S.C. 327, 334, 592 S.E.2d 335, 339 (Ct. App. 2004). Furthermore, "[i]n construing a statute, this Court will reject an interpretation when such an interpretation leads to an absurd result that could not have been intended by the legislature." Lancaster Cty. Bar Ass'n v. S.C. Comm'n on Indigent Def. , 380 S.C. 219, 222, 670 S.E.2d 371, 373 (2008).
As we previously mentioned, the legislature intended for section 56-5-2953 to require the State to video important events in the process of collecting DUI evidence. Reading the statute as a whole, we note section 56-5-2953(B) states: "Failure by the arresting officer to produce the video recording required by this section ...." (emphasis added). As the supreme court noted in Town of Mount Pleasant , the legislature intended subsection (B) to excuse noncompliance with subsection (A) in certain situations.
**376 393 S.C. at 346, 713 S.E.2d at 285 (stating "[s]ubsection (B) of section 56-5-2953 outlines several statutory exceptions that excuse noncompliance with the mandatory videotaping requirements."). A reading to the contrary would incentivize law enforcement not to produce videos in *143 questionable cases, which is contrary to the purpose of this statute. Moreover, although we have not addressed this specifically, in cases like Johnson , 396 S.C. at 182, 720 S.E.2d at 516, cited above, we analyzed the applicability of 56-5-2953(B) before dismissing the case. Thus, we hold the trial court erred as a matter of law in finding 56-5-2953(B) inapplicable.
The State argues because this case involves an accident scene rather than a traditional DUI traffic stop, it qualifies for the third exception under 56-5-2953(B) and therefore, conformity with the statute must only begin as soon as practicable. Initially, the fact that Trooper Barnett started the video upon his arrival at the scene strongly supports a finding it was practicable at that time. The State relies on State v. Henkel , 413 S.C. 9, 774 S.E.2d 458 (2015) to support its argument that section 56-5-2953(B) applies to this case. Similar to this case, Henkel involved a car accident. Id. The defendant, Henkel, left the scene of the accident and law enforcement found him several hours later. Id . When the officer arrived, Henkel was receiving medical treatment in the back of an ambulance. Id . At that point, the officer read Henkel his Miranda rights and performed a field sobriety test on him while he was in the ambulance and out of view of the camera. Id . Later, while on camera, the officer read him his Miranda rights again. Id . The issue was whether the requirements of section 56-5-2953(A) were met. Id . The court determined section 56-5-2953(B) applied and the first reading of Miranda occurred prior to the time video recording became practicable because Henkel was in the back of an ambulance receiving medical treatment. Id . at 15-16, 774 S.E.2d at 462.
This case also involves an accident. However, the accident is not the reason Kinard could not be videotaped. Deputy Snelgrove testified Kinard was yelling at multiple individuals and was not cooperating with EMS workers when he arrived at the scene. When Deputy Snelgrove attempted to calm him down, Kinard yelled profanities at him and "squared off" at him twice, once with a balled up fist. Kinard's behavior lead to **377 Deputy Snelgrove putting him in handcuffs, placing him under arrest for disorderly conduct, and putting him in his car. Deputy Snelgrove apprised Trooper Barnett of Kinard's behavior. Trooper Barnett decided not to attempt to remove Kinard from Deputy Snelgrove's car based on Kinard's prior behavior and refusal to respond to him. Thus, similar to Henkel , it was impractical to remove Kinard from the car to capture him on the video. However, unlike Henkel , the practicality of videoing Kinard's conduct was not due to the accident, but Kinard's own conduct. Therefore, based on the totality of the circumstances, we find the failure to video Kinard while Trooper Barnett read him his Miranda rights qualifies under the fourth exception under section 56-5-2953(B).
CONCLUSION
The trial court correctly found the State did not comply with section 56-5-2953(A) when it failed to show Kinard during the reading of Miranda . However, the trial court abused discretion in finding section 56-5-2953(B) inapplicable. Based on the totality of the circumstances, the State's failure to comply with section 56-5-2953(A) is excused under 56-5-2953(B). The dismissal of the DUI charge against Kinard is
REVERSED and REMANDED.
SHORT and MCDONALD, JJ., concur.